FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 29, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

TAMI LYN S.,[1]

        Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,[2]

        Defendant.

No.   1:25-cv-3033-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), he is hereby substituted as the defendant.

Plaintiff Tami Lyn S. argues that she is unable to work due to her physical and mental impairments and therefore asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 disability insurance benefits. In response, the Commissioner asks the Court to affirm the ALJ's denial. For the reasons that follow, the ALJ's decision is reversed and the case is remanded for further proceedings.

## I. Background

In June 2022, Plaintiff applied for disability insurance benefits under Title 2, alleging an onset of October 5, 2018.[3] Plaintiff's claim was denied at the initial and reconsideration levels.[4] Thereafter, Plaintiff requested an administrative hearing, which was held in September 2023, at which Plaintiff and a vocational expert testified.[5]

Plaintiff, who was 43 at the time of the hearing, testified regarding her inability to work due to physical and mental conditions.[6]

---

[3] AR 234-236.

[4] AR 149, 154.

[5] AR 161, 75-122.

[6] AR 75-122.

Plaintiff testified that her educational level is that she obtained an associate's degree.[7] She said that in 2012 she worked for Total Care, a company that provided geriatric helpers for disabled adults, and she worked as a cleaner.[8] She did not remember the heaviest weight carried but said she was in better health at the time.[9] She worked in 2015 for EPIC and did childcare.[10] In 2018, she worked for the Wapato School District as a one-on-one aid for special needs children.[11]

Plaintiff testified that she had several knee surgeries but still had "horrible issues" with her knees.[12] She said that her knee issues impact her ability to perform all everyday chores.[13] She said that she can only

---

[7] AR 80.

[8] *Id.*

[9] AR 81.

[10] *Id.*

[11] AR 82.

[12] AR 99.

[13] *Id.*

stand for 10 to 15 minutes and that her son, her sister, and a friend come and help her.[14] She is uncomfortable sitting, standing, or laying down and has to constantly change positions.[15] When she is stressed, Meniere's flares up and she is incontinent and vomiting.[16] She has no way of knowing when the Meniere's will flare up.[17] It has gotten worse as she has gotten older.[18] She was let go from her last job because she had a Meniere's episode and she vomited and wet herself.[19]

Plaintiff testified that she takes medication for the Meniere's but she still has episodes so bad that she has to go to the ER to be treated for dehydration from vomiting so often.[20] She said there is no cure for

---

[14] AR 99-100.

[15] *Id.*

[16] AR 100.

[17] AR 101.

[18] AR 102.

[19] AR 103.

[20] *Id.*

Meniere's.[21] She said the motion of driving will make her dizzy, both because of the motion and the smell of the exhaust and gasoline.[22] She does have medication for driving but it does not always work and at times she has had to pull over and vomit.[23]

Plaintiff said she has had a total of 4 knee surgeries.[24] She had 2 surgeries on each knee.[25] She had difficulty with her memory and could not remember the dates of the surgeries.[26] She said she injured her knee in 2020 because she was on her father's cattle farm and that she was mowing the lawn with a tractor.[27] She was not able to help her father anymore after the August 2020 injury.[28] After that she would

---

[21] *Id.*

[22] AR 105.

[23] *Id.*

[24] AR 106.

[25] AR 107.

[26] AR 108.

[27] AR 109-110.

[28] AR 111-112.

only help out occasionally and would go out to the fields to replace sprinkler heads.[29]

After the hearing, the ALJ issued a decision denying benefits.[30] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence."[31] As to the medical opinions, the ALJ found:

- the opinions of treating sources Michele Jacobs, DPT, and George Liu, MD, to be not persuasive.

- The opinions of the state agency consultants that the record lacked sufficient evidence on which to evaluate the case to be not persuasive.[32]

---

[29] AR 118-119.

[30] AR 22-47. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[31] AR 35-38. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should replace the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[32] AR 38-40.

The ALJ also considered the third-party statements of four family members and friends and found them to be of limited persuasiveness because they lacked reference to objective evidence.[33] As to the sequential disability analysis, the ALJ found:

- Plaintiff last met the insured status requirements of the Act on September 30, 2020.

- Step one: Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 5, 2018, through her date last insured of September 30, 2020.

- Step two: Plaintiff had the following medically determinable severe impairments: patellofemoral arthritis of the bilateral knees; status-post right knee partial meniscectomy and lateral release; and status-post left knee partial meniscectomy, loose body removal, and lateral release. She also found that Plaintiff had the following medically determinable impairments which were not severe:  obesity, chronic sinusitis, Meniere's disease, cataracts, depression, and anxiety.

---

[33] AR 39.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments and specifically considered Listings 1.17 and 1.18.

- RFC: Plaintiff had the RFC to perform light work with the following additional limitations:

  > she can lift/carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 4 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday. The claimant can occasionally push and/or pull with the bilateral lower extremities. She can occasionally balance, climb ramps and/or stairs, kneel, and crawl. The claimant can never climb ladders, ropes, or scaffolds. She can never work at unprotected heights or around moving mechanical parts or heavy machinery; and can never be exposed to vibration.

- Step four: Plaintiff was unable to perform any past relevant work a nurse aide or a teacher aide 1.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

numbers in the national economy, such as office helper, storage facility rental clerk, and mailroom clerk.[34]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[35]

## II. Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[36] and such error impacted the nondisability determination.[37] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

---

[34] AR 27-41.

[35] AR 1–7, 232; ECF No. 1.

[36] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[37] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[38]

## III.   Analysis

Plaintiff initially argued the ALJ erred in failing to find Plaintiff's Meniere's disease, depression, and anxiety to be severe impairments at step two; erred by not properly evaluating Plaintiff's testimony; and erred by not properly assessing the medical opinions.[39] The Commissioner argues that the ALJ properly found Plaintiff's Meniere's disease and mental impairments to be non-severe; properly evaluated

---

[38] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[39] ECF No. 8.

Plaintiff's testimony; and properly considered the medical opinions.[40]
As is explained below, the ALJ's analysis contains consequential error,
and the case should be remanded for further proceedings to develop the
record.

**A.    Step Two: Plaintiff established consequential error.**

Plaintiff contends the ALJ erred when she found Plaintiff's
Meniere's disease and mental impairments to be non-severe The Court
agrees that the ALJ's finding that Plaintiff's Meniere's disease is not
severe was not supported by substantial evidence.

1.    <u>Standard</u>

At step two, the ALJ determines whether the claimant suffers
from a severe impairment, i.e., one that significantly limits her
physical or mental ability to do basic work activities.[41] This involves a
two-step process: 1) determining whether the claimant has a medically
determinable impairment, and 2) if so, determining whether the

---

[40] ECF No. 10.

[41] 20 C.F.R. § 416.920(c).

impairment is severe.[42] To be severe, the medical evidence must establish that the impairment would have more than a minimal effect on the claimant's ability to work.[43]

Neither a claimant's statement of symptoms, nor a diagnosis, nor a medical opinion sufficiently establishes the existence of an impairment.[44] Rather, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."[45] If the objective medical signs demonstrate the claimant has a

---

[42] *Id.* § 416.920(a)(4)(ii).

[43] *Id.*; *see also* Soc. Sec. Rlg. (SSR) 85-28 (Titles II and XVI: Medical Impairments That Are Not Severe).

[44] 20 C.F.R. § 416.921.

[45] *Id. See also* SSR 85-28 at *4 ("At the second step of sequential evaluation . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.").

medically determinable impairment,[46] the ALJ must then determine whether that impairment is severe.[47]

The severity determination is discussed in terms of what is *not* severe.[48] A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[49] Because step two is simply to screen out weak claims,[50] "[g]reat care should be exercised in applying the not severe impairment concept."[51] Step two "is not meant to identify the impairments that should be taken into account when

---

[46] "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." *Id.* § 416.902(l).

[47] *See* SSR 85-28 at *3.

[48] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[49] *Id.*; *see* SSR 85-28 at *3.

[50] *Smolen*, 80 F.3d at 1290.

[51] SSR 85-28 at *4.

1    determining the RFC" as step two is meant *only* to screen out weak

2    claims, whereas the crafted RFC must take into account all

3    impairments, both severe and non-severe.[52]

4        2.    The ALJ's consideration of Meniere's disease

5        The ALJ articulated her consideration of Plaintiff's Meniere's

6    disease as follows:

7

8        Treatment records from her primary care providers reveal
         the claimant has been treated for complaints of Meniere's
9        disease. Notably, the claimant has reported this condition is
         longstanding, and she has performed substantial gainful
10       activity in spite of any associated symptoms such as nausea
         and dizziness. There is minimal to no objective evidence to
11       indicate a substantial worsening of this condition. Most
         examinations reveal intact extraocular movements as well
12       as normocephalic, atraumatic, and moist mucus membranes
         of the ear canals, and no neurological deficits (e.g., Ex. 1F;
13       Ex. 4F, pages 46-47; Ex. 15F, pages 4-14). In late 2018, the
         claimant was prescribed targeted medication Phenergan to
14       be used as needed (Ex. 4F, page 47). During a follow-up visit
         the next month, the claimant reported her Meniere's
15       symptoms as improved and that she was not requiring
         medication (Ex. 4F, pages 44-45). The claimant is not under
16       the care of an ENT specialist, neurologist, or other related
         specialist; and has not been participated in vestibular rehab
17       or other associated treatment.

18

19

20

21

22   [52] *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).

23

### 3. Relevant Medical Evidence

On October 3, 2018, Plaintiff presented to Kari Hoover, PA, with acute frontal sinusitis and Meniere's disease.[53] Plaintiff reported that her medications were not working and she was still vomiting.[54] She was requesting to speak with behavioral health care due to bullying at work and reported having gained 30 pounds due to stress, which had also been triggering her Meniere's disease.[55] Although mental status examination was largely normal, Plaintiff reported symptoms of depression, anxiety, worry, anhedonia, fatigue, impaired sleep and concentration, and low self-esteem.[56] Plaintiff reported that she remained open to additional treatment options for Meniere's disease.[57]

---

[53] AR 436.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

On October 4, 2018, Plaintiff presented to Sarah Ortner, MHC, for behavioral health services, on the referral of PA Hoover.[58] Plaintiff was reporting stress due to workplace bullying and mistreatment.[59] On mental status examination, Plaintiff was oriented and alert, distraught when discussing her workplace, somewhat guarded, tidy, and had moderate insight and judgment.[60] MHC Ortner assessed adjustment disorder with mixed anxiety and depressed mood, and recommended psychotherapy.[61]

On October 16, 2018, Plaintiff presented to Arissa Wahlberg, PhD, with symptoms of anxiety and depression and reporting that she was in bed 3 days that week due to symptoms.[62] She reported that she

---

[58] AR 435.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] AR 434.

did not think she could return to work and had a severe panic attack when in the shower.[63]

On October 23, 2018, Plaintiff presented to Dr. Wahlberg and reported continued symptoms of depression and anxiety, with concern that she could not return to her job, especially if changes were made as it would increase her anxiety.[64] Dr. Wahlberg opined that Plaintiff's work environment was significantly impacting her stress levels, which was in turn exacerbating her Meniere's symptoms.[65] On November 15, 2018, Plaintiff presented to Dr. Wahlberg, for follow-up for adjustment disorder with mixed anxiety and depression, with largely normal mental status examination but reporting symptoms of depression and anxiety with gradual improvement.[66] Dr. Wahlberg notes that

---

[63] *Id.*

[64] AR 433.

[65] *Id.*

[66] AR 431.

Plaintiff's symptoms of Meniere's were quite bothersome with daily bouts of vomiting.[67]

On November 30, 2018, Plaintiff presented to Dr. Aldaw with worsening symptoms of Meniere, stating that stress in her job was worsening her Meniere's disease, and that sometimes the symptoms are debilitating.[68] Plaintiff reported that she uses Dramamine when driving and a scolpamine patch when she is a passenger.[69]

On December 14, 2018, Plaintiff presented to Rana Aldaw, MD, for a follow-up for Meniere's disease and dysuria.[70] Plaintiff reported she was on FMLA because her work environment was too stressful and was worsening her Meniere's disease.[71] Plaintiff was offered another position less ideal and she declined.[72]

---

[67] *Id.*

[68] AR 427.

[69] *Id.*

[70] AR 425.

[71] *Id.*

[72] *Id.*

On February 13, 2019, Plaintiff presented to Sarah Ortner, MHC, on a referral for adjustment disorder due to stress.[73] MHC Ortner notes that Plaintiff was making gradual progress toward increased functionality and assessed adjustment disorder with mixed anxiety and depressed mood.[74] She recommended psychotherapy.[75] On February 25, 2019, Plaintiff presented to PA-C Abe Sellards, complaining of continued cold symptoms of 2 weeks and stating that she was leaving for Costa Rica in 2 weeks and wanted to feel better before leaving for her vacation.[76] Plaintiff was not seen again until July 2020.[77] Plaintiff complained of nasal congestion, malaise, and a cough but denied vomiting or nausea.[78] Plaintiff was alert and oriented on examination.[79]

---

[73] AR 415.

[74] *Id.*

[75] *Id.*

[76] AR 413.

[77] AR 528.

[78] *Id.*

[79] AR 414.

In January 2020, Plaintiff reported at an orthopedic follow-up appointment that she was planning to vacation in Jamaica in several months but would return in March prior to her vacation.[80]

On March 11, 2020, Plaintiff presented to MHC Ortner, for evaluation.[81] Plaintiff reported she was unemployed since a traumatic workplace incident in 2018 and felt that short-term memory issues affected her ability to work.[82]  On mental status examination, Plaintiff had an anxious mood and affect but her exam was otherwise within normal limits.[83] MHC Ortner administered a MOCA assessment and noted a total score of 25/30, indicating only a mild cognitive impairment.[84] MHC Ortner assessed anxiety and recommended psychotherapy.[85] On March 11, 2020, Plaintiff was referred to welfare

---

[80] AR 526-527.

[81] AR 400.

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.*

DISPOSITIVE ORDER - 20

support specialist Michael Figueroa by Sarah Ortner, MHC.[86]

Mr. Figueroa counseled Plaintiff regarding her options to file for state

disability and SSDI/SSI.[87]

On April 21, 2020, Plaintiff presented to Taylor Curtis, PA, with

regard to chronic sinusitis, and reported several recent episodes of

Meniere's, with headaches, dizziness, nausea and vomiting.[88] It was

noted that treatments such as netti pots and Flonase worsened her

Meniere's and that scopolamine was not working as effectively to treat

symptoms.[89] PA Tylor assessed chronic sinusitis and Meniere's disease,

left.[90]

On July 6, 2020, Plaintiff presented to Kari Hoover, PA, with

complaints of shortness of breath and dizziness different from her

---

[86] AR 399.

[87] *Id.*

[88] AR 396.

[89] *Id.*

[90] *Id.*

Meniere's dizziness.[91] On examination, Plaintiff was oriented with appropriate mood and affect, and watery fluid was noted behind the ear drum.[92] PA Hoover diagnosed bilateral eustachian tube dysfunction and recommended a trial of Flonase.[93]

On October 5, 2020, Plaintiff presented to Dr. Russell reporting that she was considering medication for her severe depression.[94] She complained of short-term memory loss and losing her temper.[95] Patient explained that she was reluctant to take medication because many will exacerbate her severe Meniere's disease.[96] Plaintiff reported fatigue, shortness of breath, heart palpitations, anxiety, irritability, memory loss, headaches, inability to concentrate, and frequent crying.[97] On

---

[91] AR 394.

[92] AR 394-395.

[93] AR 395.

[94] AR 389.

[95] *Id.*

[96] *Id.*

[97] *Id.*

examination, Plaintiff was anxious, depressed and restless, with an

anxious/depressed affect and an anxious/agitated, depressed/labile

mood, but was cooperative, alert, and oriented.[98]  Dr. Russell assessed

Plaintiff with a moderate episode of recurrent major depressive

disorder and memory loss or impairment.[99] Dr. Russell referred

Plaintiff to behavioral health care for a MOCA assessment.[100]

On October 5, 2020, Plaintiff also presented to Dr. Wahlberg, for

behavioral health care services on Dr. Russell's referral.[101] She

reported cognitive/memory issues to Dr. Russell, as well as depression,

anhedonia, guilt, and impaired concentration, which was exacerbated

by Meniere's disease.[102] Dr. Wahlberg conducted a MOCA assessment

and assessed a score of 25/30, which indicated a stable mild cognitive

---

[98] AR 390.

[99] AR 391.

[100] *Id.*

[101] AR 388.

[102] *Id.*

impairment likely related to depression.[103] Dr. Wahlberg assessed a

moderate episode of recurrent major depressive disorder and a mild

cognitive impairment and recommended psychotherapy.[104]

On November 12, 2020, Plaintiff presented to Margaret Russell,

MD.[105] She reported that her depression had improved with

Venlafaxine but she was feeling nauseated and vomiting.[106] She was

walking with a walker due to recent knee surgery.[107] Plaintiff reported

fatigue, shortness of breath, anxiety, memory issues, anxiety,

headaches, frequent crying, inability to concentrate, and anxiety.[108] On

examination, she exhibited flight of ideas and abnormal thought

patterns, she was anxious and agitated, and her speech was fast and

---

[103] *Id.*

[104] *Id.*

[105] AR 385-387.

[106] AR 385.

[107] *Id.*

[108] *Id.*

tangential.[109] Dr. Russell assessed a moderate episode of recurrent major depressive disorder, and post-op knee pain.[110] On November 30, 2018, Plaintiff saw Dr. Aldaw for a follow-up appointment and was noted to have worsening symptoms of Meniere's disease with debilitating symptoms.[111] Dr. Aldaw noted that 2-3 years prior Plaintiff had been evaluated by neurologist Richard Sloop, MD.[112]

On October 13, 2021, Plaintiff presented to Julie Aubrey, LMHC, for regular psychotherapy, and reporting that she had been dealing with "a lot of" vertigo and nausea due to her Meniere's disease, reporting that she experienced a flare-up after turning too fast during a massage.[113]

---

[109] AR 386.

[110] AR 387.

[111] AR 427.

[112] *Id.*

[113] AR 747.

On December 15, 2021, Plaintiff presented to Ms. Aubrey with a moderate degree of stress, anxiety, and depression.[114] Impact on her overall function was described as moderate.[115]

On January 25, 2022, Plaintiff presented to her optometrist, James Beard, OD, on the referral of Dr. Stapleton, who noted that she has "very strong Meniere's disease."[116] Plaintiff reported that because of her Meniere's disease she cannot tolerate toric contact lenses or bifocal/progressive glasses.[117]

At a September 27, 2023 physical therapy appointment, Michele Jacobs, PT, noted that Plaintiff was experiencing severe swelling and loss of function in her left knee, and that she had memory issues and severe Meniere's disease following a childhood TBI, and was fearful of surgery.[118] At her October 11, 2023 physical therapy appointment,

---

[114] AR 735-736.

[115] AR 736.

[116] AR 456.

[117] AR 457.

[118] AR 898.

Plaintiff's participation in certain therapies was limited because she had not taken her Meniere's medication on that date.[119] PT Jacobs noted that testing had to be done in sitting position due to Meniere's disease.[120]

### 4.   Analysis

The ALJ's articulated reasoning regarding Meniere's disease is not supported by substantial evidence.  First, the ALJ's reasoning that Plaintiff had performed substantial gainful activity for years despite Meniere's disease is flawed because Plaintiff's medical records document a worsening of her condition in 2018, when she experienced episodes of Meniere's while working that caused her to vomit and to become incontinent and reported that her medications were no longer working.[121] It was noted in 2018 by both Dr. Wahlberg and Dr. Aldaw that Plaintiff had experienced a worsening of her symptoms.[122]

---

[119] AR 880.

[120] AR 901.

[121] AR 436.

[122] AR 431, 427.

Throughout the record Plaintiff's Meniere's disease was described by her providers as "severe" or "debilitating."[123]

As noted previously, the state agency consultants did not have a complete record when they evaluated the claim and found there was insufficient evidence to evaluate the claim. Moreover, of the two treating sources that rendered opinions, one (Dr. Liu) did not opine as to limitations from Plaintiff's Meniere's and one (PT Jacobs) did not fully evaluate the condition.

The record reflects that Plaintiff was referred to an ENT, Dr. Sloop, and that surgery was discussed but the record does not contain Dr. Sloop's records. Because surgery to treat Meniere's disease is often associated with a risk of hearing loss or cutting of the vestibular nerve,[124] it is unclear what's Dr. Sloop's recommendations were regarding the benefits and risks of surgery.

---

[123] AR 425, 396, 389, 747, 456.

[124] *Meniere's disease*, Mayo Clinic, www.mayoclinic.org (last seen August 21, 2025).

"The ALJ always has a special duty to fully and fairly develop the record" to make a fair determination as to disability, even where, as here, "the claimant is represented by counsel."[125] This "affirmative responsibility to develop the record" is necessary to ensure that the ALJ's decision is based on substantial evidence.[126]

On this record, without a treating, examining, or reviewing opinion as to the expected effects of Plaintiff's Meniere's disease, the Court "cannot conclude that the ALJ's decision was based on substantial evidence . . . ."[127]

At a minimum, the record should be developed by obtaining Dr. Sloop's records and in absence of those records, a consultative examination should be scheduled with an appropriate medical source to determine the expected limitations caused by the condition.

---

[125] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up).

[126] *Id.* at 1184.

[127] *Id.*

DISPOSITIVE ORDER - 29

The Court concludes that remand is warranted for the ALJ to properly develop the record and/or to call a medical expert to testify at the hearing as to the effects of Plaintiff's Meniere's disease.

## B. Medical Opinions and Symptom Reports: This issue is moot.

Plaintiff argues that the ALJ failed to provide valid reasons for discounting certain medical opinions and her subjective complaints. Because the Court has remanded the case with direction that the ALJ re-evaluate Plaintiff's impairments, the ALJ will be required to re-evaluate the medical opinions and Plaintiff's symptom reports. These issues are therefore moot.

## C. Remand for Further Proceedings

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[128] When the court reverses an ALJ's decision for error, the court "ordinarily

---

[128] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

must remand to the agency for further proceedings."[129]

The Court finds that further development is necessary for a proper disability determination.  Here, it is not clear what, if any, additional limitations are to be added to the RFC.

## IV.  Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further development of the record as to the period from October 11, 2019, through October 20, 2021.

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

---

[129] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595  ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

1       IT IS SO ORDERED. The Clerk's Office is directed to file this

2  order and provide copies to all counsel.

3       DATED this 29th day of August 2025.

4

5  _____

6  EDWARD F. SHEA
   Senior United States District Judge